UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY IRWIN,

           Plaintiff,

    v.                            CASE NO. 8:12-CV-1025-T-23MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action for review of the administrative denial of supplemental security income (SSI). *See* 42 U.S.C. § 1383(c)(3). Plaintiff contends that the Administrative Law Judge (ALJ) erred by failing to order a post-hearing consultative examination and by discounting Plaintiff's credibility. After considering the parties' briefs and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A.    Background*

Plaintiff Timothy Irwin was born on May 3, 1956. (R. 29) He has a GED and has past work experience as a carpenter, tile setter, and a contractor. (*Id.*) Plaintiff alleges disability commencing January 1, 1997, due to an artificial left hip, hernias, Hepatitis C, and degenerated joint disease.[1] (R. 190) After a hearing, the ALJ found Plaintiff has the severe impairments of a total left hip replacement and degenerative arthritis of the right hip. (R. 22) Aided by the testimony of a vocational

_____

[1] Since 1994, Plaintiff has filed five applications for benefits; each has been denied. (R. 20)

expert (VE), the ALJ determined that Plaintiff is not disabled as he has the RFC to perform light work that permits him to alternate positions from sitting to standing (R. 26)  The ALJ determined that, with this RFC, the Plaintiff could not perform his past relevant work but could perform work as an information clerk, an assembler, and a product inspector. (R. 30) The Appeals Council denied review.  Plaintiff, who has exhausted his administrative remedies, filed this action.

      *B.*     *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that establish a "sequential evaluation process" to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §  416.920(a)(4).  Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the

2

claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience.  20 C.F.R. § 416.920(a)(4).  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists."  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

C.      *Discussion*

1.      *ALJ's duty to order a consultative exam*

Plaintiff contends that the ALJ erred by failing to order a post-hearing consultative exam concerning his right hip impairments because the evidence was insufficient to determine whether Plaintiff was disabled.  The Commissioner disputes this and points out that Plaintiff failed to show up at his pre-hearing consultative exam appointment.

A hearing before an ALJ is not an adversarial proceeding, and the ALJ has a basic obligation

3

to develop a full and fair record, even where, as here, the claimant was represented by counsel. *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Nevertheless, it remains plaintiff's burden to prove he is disabled. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Further, a plaintiff is required to show prejudice from the lack of development of a record before a case will be remanded. *See Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). The record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (citation and quotations omitted); *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008).

Social Security regulations provide that the agency may order a consultative exam "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a. An example of when the agency may order a consultative exam is when "[t]he additional evidence needed is not contained in the records of your medical source." *Id*. The decision of whether to order a post-hearing consultative exam is at the ALJ's discretion. *See id.* (providing that the agency "*may* decide to purchase a consultative examination") (emphasis added). If the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ need not obtain a consultative exam. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Additionally, an ALJ may make a disability determination based on the evidence available, even if the evidence is deemed insufficient, if the agency's efforts to obtain additional evidence are unsuccessful. *See* 20 C.F.R. § 404.1520b(d).

Here, prior to an administrative hearing, the agency referred Plaintiff to a consultative exam with an orthopedic surgeon. (R. 58) Plaintiff did not show up for his appointment. (*Id*.) He testified

4

that he did not know why he did not show up but "it could've been I didn't get the mail or the notice. If I'd have got it, I'd have been there." (*Id.*)  At the time, however, Plaintiff did not offer a reason for his failure to show up for his exam.  Plaintiff now suggests that it was the Commissioner's responsibility to attempt to make a second appointment for Plaintiff once he missed his first appointment (doc. 15 at 10).  This is incorrect.  *See* 20 C.F.R. § 404.1518(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination . . . , we may find that you are not disabled or blind. . . .  If you have a good reason, we will schedule another appointment.")

Plaintiff also argues that the ALJ, once he reviewed the evidence and noticed that Plaintiff did not show up for his appointment, should have ordered a post-hearing consultative exam.  At the outset, I note that Plaintiff's counsel did not request a consultative exam at the hearing and made no complaints about the factual development of the record.  "In this Circuit, the general rule is that an argument not raised in an administrative hearing cannot be raised on appeal." *Whisenant v. Astrue*, No. 8:09-cv-931-T-23TBM, 2010 WL 2034698, at *5 (M.D. Fla. Apr. 27, 2010) (citation and quotations omitted) (distinguishing *Sims v. Apfel*, 530 U.S. 103, 105-07 (2000), and stating that represented claimants must raise all issues and evidence at their administrative hearings in order to preserve them on appeal).  Plaintiff's counsel did not request a consultative exam nor suggest that one was necessary for the ALJ to make an informed decision.  Nor did he raise this complaint before the Appeals Council. (R. 246-48)  Thus, it is questionable whether Plaintiff can even raise the issue in this Court.  Nonetheless, Plaintiff still loses on the merits of his claim.

First, Plaintiff points out that in June 2007, August 2007, and October 2007, state agency non-examining physicians determined that there was insufficient evidence to establish whether the

claimant had a medically determinable mental or physical impairment. (R. 25) Plaintiff overlooks that an ALJ must consider the findings of state agency medical consultants but is not required to defer to their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(i).  What is more, the agency consultants, who rendered their opinions in 2007, did not have the complete record before them: In 2008, a medical source opined that Plaintiff's right hip could be treated through injections rather than surgery (discussed below). (R. 25)

Second, and most importantly, Plaintiff can point to no prejudicial evidentiary gaps. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (noting that "court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice") (citation and quotations omitted).  Plaintiff had his left hip replaced in 1999 while he was in prison for aggravated domestic battery. (R. 23, 47-48) Prison hospital records indicated that he had no complaints post-surgery and that he had "excellent range of motion" in his left hip. (R. 325) This was still true years later, in 2004, when Plaintiff's treating orthopedist, Dale Bramlet, M.D., reported that an x-ray showed a satisfactory aligned left hip. (R. 259, 261) And in 2008, Steven Warren, M.D., an orthopedist who treated Plaintiff only once, noted that Plaintiff's left hip was in relatively good condition. (R. 465-66)

At some point in 2004, Plaintiff's right hip started hurting.  Dr. Bramlet observed that Plaintiff had symptoms of arthritis in his right hip, that he had limited internal and external rotation of that hip, and that he would need a total right hip replacement. (R. 259) Plaintiff testified that he did not have the operation, however, because he was worried he had no where to go to recuperate and no one to care for him. (R. 53-54)  He apparently dealt with the pain by using a cane to assist him with walking (R. 49), but he did not consult another physician about his right hip until his

primary care doctor, Mart Howell, M.D., diagnosed him with degenerative joint disease of the right hip and referred him to Dr. Warren. (R. 462) In 2008, Dr. Warren related that Plaintiff's pain had progressed over the past six months and noted that Plaintiff had "significant degenerative arthritis in the right hip." (R. 465) Nonetheless, "[i]n light of [Plaintiff's] young age and history of Hepatitis-C we certainly want to try to treat him conservatively if we possibly can.  We are going to try an intraarticular injection under fluro and sterile technique at the hospital in the radiology department. . . . If he gets relief he can always have it repeated." (R. 465)  The doctor continued: "If he does not get relief we will have to further discuss the possibility of surgery."  (*Id*.)

After reviewing this evidence, the ALJ determined that Plaintiff's degenerative arthritis in his right hip was a severe impairment, which by definition significantly limits his ability to perform basic work activities.  *See* 20 C.F.R. § 404.1521.  The ALJ found that Plaintiff was still capable of light work, however, with a sit/stand option.  In making this finding, the ALJ also examined Plaintiff's testimony as to his daily activities:  Plaintiff uses public transportation when he needs to run an errand, shops for groceries every once in a while, cleans up his living space at his friend's house, and reads for about an hour every day. (R. 54-56)  Additionally, none of Plaintiff's treating sources over the years had opined that Plaintiff had limitations that would prevent him from performing light work.

Although Plaintiff takes issue with the ALJ's characterization of his treatment records, he points to no evidentiary gaps in the record sufficient to warrant a consultative examination. Plaintiff's first argument fails.  *See Rivers v. Astrue*, 901 F.Supp.2d 1317, 1327-28 (S.D. Ala. Sept. 28, 2012) (dismissing Plaintiff's contention that ALJ lacked sufficient evidence and was required to order a consultative exam).

2.      *Plaintiff's credibility*

Next, without citing to the record or case law, Plaintiff argues that the ALJ's credibility determination is flawed.  The ALJ stated:

> The undersigned finds that the claimant's statements concerning his impairments and their impact on his ability to work not entirely credible in light of the findings made on examination.  Specifically, the undersigned finds that there are inconsistencies with the claimant's allegation of disabled symptomatology [sic], and the objective medical evidence. . . . [A]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the finding of both his treating and examining physicians and due to his inconsistent statements throughout the record.

(R. 27-28)

Credibility determinations are the province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  To aid ALJs in assessing credibility, the Eleventh Circuit has established a three-part "pain standard" that applies to claimants that attempt to establish a disability through their own testimony of subjective complaints.  The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.  *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991).  When the ALJ decides not to credit a claimant's testimony as to his pain, the ALJ must articulate explicit and adequate reasons for doing so.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Id.* at 1562**.**

Plaintiff explains that he was uninsured and unable to afford treatment (doc. 15 at 12).

8

Indeed, one of the reasons the ALJ discounted Plaintiff's credibility was that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual, and the record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms." (R. 28)  The ALJ did not discuss Plaintiff's inability to afford treatment.

The inability to afford medical treatment can constitute good cause for noncompliance with a course of treatment.  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  If one's disability can be cured by treatment or compliance, yet such treatment is not financially available, the condition is disabling in fact and continues to be disabling in law.  *Id*. at 1213.  A distinguishing fact between *Dawkins* and this case is that the claimant in *Dawkins* testified at the administrative hearing that the reason for failing to take her medication was because she could not afford it.  The Plaintiff here did not testify about his ability to afford treatment; in fact, the reason he did not have his right hip replacement surgery was not because he could not afford it but because he did not have a place to recuperate. (R. 53) The ALJ asked Plaintiff: "So if, for example, tomorrow morning you wanted the right hip replaced – Could you get it done?"  (*Id*.)  Plaintiff answered: "Yeah." (*Id*.)  The ALJ continued: "But your concern is that you have no place to go to ..."  Plaintiff cut him off and explained: "I have no place to go to rehab." (*Id*.)  Further, Plaintiff's lack of treatment was but one factor the ALJ considered in determining Plaintiff's credibility; thus, the ALJ's credibility determination is not "inextricably tied to the finding of noncompliance." *Dawkins*, 848 F.2d at 1214.

Second, according to Plaintiff, the fact that Plaintiff engaged in limited daily activities does not diminish his complaints of disabling pain.  Although Plaintiff is correct that "participation in everyday activities of short duration" does not disqualify a claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ is tasked with considering factors relevant

to a claimant's complaints of pain, including his daily activities.  *See* 20 C.F.R. § 404.1529(c)(3)(i).

Plaintiff's daily activities were not the only factor the ALJ considered in discounting Plaintiff's

credibility.  He also considered Plaintiff's relative lack of treatment, his inconsistent statements, and

the medical evidence of Plaintiff's limitations.  The ALJ's credibility determination is not in error.

>           *D.*      *Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1.       The decision of the Commissioner be AFFIRMED and judgment be entered in favor

of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on August 5, 2013.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from

attaching the factual findings on appeal.  28 U.S.C. § 636(b)(1).